UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FORREST HOLLAND, *et al.*,

    Plaintiffs,

v.

AMERICA WEST AIRLINES,

    Defendant.

Case No. C05-0036L

ORDER GRANTING IN PART
AND DENYING IN PART MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant America West Airlines ("America West"). (Dkt. #28). Plaintiff Forrest "Bob" Holland ("plaintiff") is a former employee of America West. He asserts claims against America West for negligent misrepresentation and for failure to accommodate his disability in violation of the Washington Law Against Discrimination, RCW 49.60 *et seq.* (the "WLAD"). America West seeks to dismiss both of plaintiff's claims against it.[1] At

---

[1] America West stated in a footnote that its motion does not involve the other plaintiff, Barbara Desira, who asserted a failure to accommodate claim and a separate

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 1

the request of both parties, the Court heard oral argument on the motion on January 31, 2006.

For the reasons set forth below, the Court grants in part and denies in part defendant's motion for summary judgment.

## II.  DISCUSSION

**A.     Background Facts.**

America West hired plaintiff as a shift supervisor at the Sea-Tac airport.  His position included overseeing employee and safety issues.  In April 2002, Barry Collier became plaintiff's direct supervisor.  Before September 2003, plaintiff typically worked four days a week from 3:00 p.m. to 1:00 or 1:30 a.m.  There was no overnight shift.

In September 2003, Collier decided that, because of deficiencies in the overnight operation, he would alter the shift schedules and create a new overnight shift.  He allowed the four supervisors to select their shifts based on their seniority.  Plaintiff, who was third in seniority, chose between two remaining shifts, and chose the shift working five days a week from 9:45 p.m. to 7:15 a.m.  On September 18, 2003, plaintiff sent an e-mail to Collier expressing disagreement with the new schedules, and stating,

> If you detect some frustration and anger in this email I apologize because its probably from lack of sleep because I can't sleep during the day with this shift without taking drugs or alcohol.  I've enjoyed working here because it afforded me the chance to go to Florida to check on my business every few weeks.  Now its

---

wage claim.  America West asserts that plaintiff's counsel has stated that Ms. Desira does not intend to pursue the wage claim separate from the reasonable accommodation claim.  Plaintiff's counsel does not dispute that assertion.  Therefore, Ms. Desira's separate wage claim is dismissed.  This ruling does not affect her ability to pursue the wage issue as an element of damages in her accommodation claim.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 2

> impossible because the way the shifts and off days are theres no way to even trade or buddy bid to get time off.
>
> This new supervisor schedule has really disheartened me and has broken my spirit about this job which I did thoroughly enjoy. Now I question if I really want to be here working this kind of shift at this point in my life. We need the 3 day break to spend time with family and enjoy the benefits otherwise is it really worth it.

Declaration of Forrest "Bob" Holland ("Holland Decl."), Ex. A. A few days later, Collier agreed to allow plaintiff to work four days a week, from 9:00 p.m. to 7:30 a.m.

On October 3, 2003, plaintiff had the first of three panic attacks at work. He took a Xanax that he received from his wife, put his head down on his desk, felt better about eight to ten minutes later, and finished his shift. Also on October 3, plaintiff met privately with Collier and explained that the overnight shift was causing him "severe anxiety," affecting his health, and rendering him unable to eat or sleep without medication. Holland Decl. at ¶ 28. Plaintiff informed Collier that if he was not taken off the overnight shift he would likely resign. Id.

On October 9, 2003, plaintiff went to see his internist, Dr. John Moen. Plaintiff complained of "upper back pain, diffuse myalgias, fatigue and occasional chills." Declaration of Kenneth Diamond ("Diamond Decl."), Ex. E. Plaintiff also stated that he had "been under a lot of stress at work, . . . is anxious much of the time and has occasional panic attacks." Id. Dr. Moen diagnosed a viral syndrome and anxiety. He gave plaintiff samples of Paxil, prescribed Xanax, and recommended that plaintiff follow-up in four-five weeks. Plaintiff did not fill the prescription, and did not return to see Dr. Moen until after he resigned from America West. Dr. Moen's records do not include any work-related recommendations or restrictions.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 3

Also on October 9, plaintiff met with Collier, and stated that the effect on his health was so severe that he was probably going to have to resign. Holland Decl. at ¶ 29. Plaintiff had one panic attack at work in November and one in December 2003. In both instances, he took a Xanax, rested for a few minutes, then finished his shift.

In January 2004, while plaintiff and Collier were walking across the ramp to Collier's office, Collier asked how plaintiff was adapting to the overnight shift. Plaintiff replied that he "was adapting, but in a sick way which entailed using drugs, *i.e.*, medication." Holland Decl. at ¶ 30. Collier did not respond. Also in January 2004, Collier proposed returning to a five-day, eight-hour shift schedule because plaintiff Desira was out on leave. Plaintiff responded that the overnight shift was "detrimental to [his] health, and [he] was experiencing severe anxiety and panic attacks from it." Id. at ¶ 31. Collier agreed to allow plaintiff to remain on the four-day shift. On January 16, 2004, plaintiff referred to the overnight shift in an e-mail to Collier as "that god-awful shift" and stated, "I will not put my job above my health." Id. at ¶ 31, Ex. C (describing the work schedule as "inhumane" and stating, "While I realize that this argument is personal, I feel that it is very valid"). Plaintiff told Collier in February 2004 that the overnight shift was very detrimental to his health, he was still having severe anxiety, he had a couple of panic attacks at work, and he could not sleep or eat. Id. at ¶ 33. Collier did not respond.

Around mid-March 2004, just before plaintiff left for a personal trip, Collier informed him that he was considering a five-day work week because the fourth supervisor was still out on leave. Plaintiff drafted a letter of resignation when he returned from his

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 4

trip.  Plaintiff and Collier met on March 24, 2004.  Collier stated that "he was going to a five-day work week, he didn't see the overnight shift ever going away, and [plaintiff] could expect to be on it forever basically."  Holland Decl. at ¶ 36.  When Collier began to address other work issues, plaintiff interrupted him and informed him of his decision to resign.  Plaintiff stated that he felt as if he had no choice because of the way "this overnight shift has affected my health so much that I, that I just can't put a job over my health.  I've had severe anxiety.  I can't sleep.  And if this is going to be the [case] for the forseeable future for five nights a week, I can't do it."  Id.  Collier asked for something in writing, and plaintiff gave him his resignation letter.

Plaintiff continued to work until April 3, 2004.  On that day, he checked the supervisor schedule for the next day, and saw that no one was scheduled for the overnight shift.  Collier eliminated the overnight shift because he was down to two supervisors.  Holland did not ask anyone why the overnight shift was not on the schedule.  Since his resignation, Holland has continued to seek treatment for anxiety and sleep related problems.

Plaintiff and plaintiff Barbara Desira filed their complaint on December 16, 2004 in King County Superior Court alleging only state law claims.  America West removed the case to this Court on January 7, 2005 based on diversity of citizenship.

**B.    Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All

reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.     Failure to Accommodate.**

In Washington, a plaintiff asserting a claim for failure to accommodate must show four elements to establish a prima facie case: (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the disability. Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 193 (2001). America West alleges that plaintiff's failure to accommodate claim fails as a matter of law because he was not substantially limited in his ability to perform his job, he did not give America West notice of any substantial limitations, and no accommodation was medically necessary.

**1.     Substantially Limited.**

America West argues, and plaintiff does not dispute, that during the time he was on the overnight shift, he received good performance reviews, he did not complain of performance difficulties, he described himself as a "very good supervisor," he was not

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 6

counseled or disciplined for performance issues, and he did not have any attendance problems. America West also argues that plaintiff's three brief panic attacks at work did not substantially limit his ability to perform his job. Defendant's Motion at p. 11 (citing Becker v. Cashman, 128 Wn. App. 79, 84-85 (2005) (holding that daily "shut down periods" lasting only a few minutes are insufficient to establish a substantial limitation)).

Plaintiff notes that America West does not dispute that he had cognizable impairments, depression and an anxiety disorder. Plaintiff argues that those impairments substantially limited his ability to perform his job because they created a risk of injury and damage to equipment. Declaration of Dr. Robert Olsen ("Dr. Olsen Decl.") at ¶¶ 19-20, 22-23 (stating that sleep deprivation, anxiety disorders, and depression all increase the risk of on the job injuries). Although plaintiff's impairments may have had the potential to limit his ability to perform his job safely, he had no accidents or near accidents. More fatal to his claim is the fact that during the relevant time period, he never gave America West notice of the potential safety risks, and he never informed anyone at America West that he had any safety concerns.

The Court next considers plaintiff's argument that he was substantially limited in his ability to perform his job because the overnight shift aggravated his anxiety disorder and depression to the point that he was forced to resign. In 2000, the Washington Supreme Court revised the test for disability in accommodation cases and added the requirement that a plaintiff show that his or her disability "has/had a substantially limiting effect upon the individual's ability to perform his or her job." Pulcino v. Federal Express Corp., 141 Wn.2d 629, 641 (2000). As America West notes, Pulcino and subsequent

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 7

cases have focused on plaintiff's ability to perform the job itself, not the effect of the job on plaintiff's condition.  However, the plaintiffs in the post-<u>Pulcino</u> cases cited by plaintiff did not allege that their jobs exacerbated their medical conditions.  <u>See</u> <u>Becker</u>, 128 Wn. App. at 79; <u>Roeber v. Dowty Aerospace Yakima</u>, 116 Wn. App. 127 (2003).  In contrast, in <u>Martini v. Boeing</u>, decided before <u>Pulcino</u>, the court held that an employer's duty to accommodate applied when the employee's job exacerbated his condition:

> In *Goodman v. Boeing*, there was no allegation that Goodman's performance was unsatisfactory.  But her work exacerbated her medical condition to the point where she was required to have surgery and her doctor advised her that she could perform only work requiring minimal use of her hands.  We held that Goodman's situation was distinguishable from the *Doe* plaintiff because there was evidence that Goodman's work seriously affected her health.  In view of the mandate of liberal construction set forth in *RCW 49.60.020*, we believe the rationale of *Goodman* applies equally to this case.

88 Wn. App. 442, 454 (1997) (distinguishing other cases, upholding jury verdict for failure to accommodate, and explaining that the record contained evidence "that Martini was diagnosed with depression and that his job impacted his condition").  <u>Pulcino</u> and subsequent cases have not disagreed with <u>Martini</u> or <u>Goodman</u>.  In fact, recent cases have cited them with approval.  <u>See, e.g.</u>, <u>Hill</u>, 144 Wn.2d at 193.  Furthermore, Washington courts have noted that the WLAD is to be interpreted liberally to reflect "the Legislature's high priority of eliminating workplace discrimination by providing an incentive for employers to accommodate disabled employees in safe positions."  <u>Goodman v. Boeing</u>, 127 Wn.2d 401, 406 (1995) (internal citations omitted).  Requiring an employee to exacerbate his medical condition to the point that he was unable to perform his job before he is entitled to any accommodation is inconsistent with prior Washington cases and the

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 8

purpose of the WLAD.  Therefore, plaintiff has raised a genuine issue of material fact on this issue.

     **2.**     **Notice to America West.**

America West argues that plaintiff did not give it notice of his abnormality and resulting limitations.  He did not list any limitations in his employment application, he never informed America West that he had depression or an anxiety disorder, never informed them that any medical condition impacted his performance, and never contacted human resources to request an accommodation as directed by the employee handbook.[2]  America West argues that plaintiff did nothing more than grouse about the overnight shift, as any employee would.  However, the notice obligation under the WLAD is not onerous; it requires that an employee give "simple notice" of his disability.  Downey v. Crowley Marine Serv., Inc., 236 F.3d 1019, 1023 n.6 (9th Cir. 2001) (internal citations omitted) (noting that employees are not required to request an accommodation to trigger the employer's duty to accommodate).  For example, the Washington Court of Appeals held that an employee had given simple notice of a disability requiring accommodation by notifying his supervisor of his depression when he began working, informing him later that the stress of his current position was potentially very hazardous to his health, and requesting a reassignment so as not to cause permanent damage to his health.  Sommer v. Dep't of Social & Health Serv., 104 Wn. App. 160, 163-64, 174-75 (2001).

---

    [2] The WLAD does not have an affirmative defense, similar to the Ellerth/Faragher defense in the area of harassment, for employers who have a written disability accommodation policy that an employee chooses not to follow.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 9

In this case, on several occasions beginning on October 3, plaintiff informed his supervisor that the overnight shift was causing him severe anxiety, was seriously affecting his health, was causing him to have panic attacks, and that the effects were so serious that he would be forced to resign absent a shift change. Although plaintiff never gave America West any medical documentation during his employment, Collier never requested it, despite plaintiff's repeated health-related complaints. Instead, under plaintiff's version of the facts, Collier ignored his statements. Accordingly, plaintiff has raised a genuine issue of fact regarding whether he gave America West notice of his condition and its limitations. See, e.g., Martini, 88 Wn. App. at 457 (finding that the employer had a duty to investigate further into the nature and impact of an employee's disability after it learned that he had symptoms of major depression and was about to begin treatment).

### 3. Medically Necessary.

America West argues that employers in Washington are only required to provide medically necessary accommodations, and are not required to provide accommodations based solely on an employee's own perception of need. America West argues that Dr. Moen did not recommend any restrictions or schedule changes when he saw plaintiff on October 9, 2003. America West has not cited any authority for the proposition that medical necessity can only be established through contemporaneous evidence. Instead, Washington cases have addressed whether there is evidence *in the record*. See, e.g., Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 147-49 (2004) (reviewing record evidence regarding motion for summary judgment); Martini, 88 Wn. App. at 455 (addressing

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 10

physicians' trial testimony). To the extent that the after the fact evidence is problematic, the concern is related more to the sufficiency of plaintiff's notice to America West rather than to establishing medical necessity. Here, Dr. Olsen stated that plaintiff "suffered a recurrence of his anxiety disorder which became complicated by major depressive disorder, both precipitated by his chronic insomnia due to his assignment on the overnight shift." Dr. Olsen Decl. at ¶ 12. Dr. Olsen also opined that plaintiff's condition "progressed" from sleep disturbance to anxiety to depression while on the overnight shift. Id. at ¶ 24. America West argues that Dr. Olsen's statements do not show that a shift transfer was necessary. Plaintiff's burden, however, is not that high. Rather, he is required to show a "nexus between the disability and the need for accommodation." Riehl, 152 Wn.2d at 147. Dr. Olsen's declaration is sufficient to establish a nexus between plaintiff's condition and the need for accommodation.

America West also argues that plaintiff did not follow Dr. Moen's advice; he did not take the recommended Xanax or Paxil. The Court, however, will not speculate about what might have occurred if plaintiff had followed Dr. Moen's advice. Furthermore, medical necessity is determined by medical evidence, not by the lay plaintiff's actions.

America West further argues that a shift change was not medically necessary because plaintiff continued to have insomnia and anxiety long after he left America West. The fact that the condition continued is irrelevant to the inquiry of whether an accommodation was medically necessary when plaintiff worked for America West. Plaintiff has raised a genuine issue of material fact on that issue.

**D.     Negligent Misrepresentation.**

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 11

Washington has adopted the Restatement (Second) of Torts, which sets forth the elements of a negligent misrepresentation claim:

> (1) One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

See Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 180 (1994). Plaintiff must prove each element by clear, cogent and convincing evidence. Id.

Plaintiff claims that after he spoke with Collier on March 24, 2004, he submitted his previously drafted letter of resignation based on Collier's statements that "he didn't see the overnight shift ever going away, and [plaintiff] could expect to be on it forever basically." Holland Decl. at ¶ 36. Plaintiff has not provided any evidence of the falsity of Collier's statements. In fact, plaintiff concedes that he believed the statements were true because he did not rescind his resignation when he saw the shift eliminated on his last day. "I'd already resigned and I felt that if I rescinded my resignation, I would be right there on midnight shift again." Holland Dep. at pp. 79-80.

Plaintiff attempts to analogize this case to Flower v. T.R.A. Indus., Inc., in which plaintiff alleged that, contrary to promises made during his job interview of termination only for cause, his employer "did not intend for the employment relationship to be anything other than at-will." 127 Wn. App. 13, 18 (2005) (noting that promises made "for the purpose of deceiving and with no intention of performing" may be actionable) (internal citation and quotation omitted). For this case to be analogous, Collier would have had to have made the statements with no intention of retaining the overnight shift

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 12

and plaintiff on it.  But Collier retained plaintiff on the overnight shift until plaintiff made it impossible to continue that situation by submitting his resignation.  In this case, unlike Flower, it was plaintiff who made the alleged promise impossible to perform.  His resignation led to Collier's decision to end the overnight shift based on having fewer full time supervisors and based on the remaining supervisors' preferences and expertise.  Collier Dep. at pp. 171, 181-82.

Several additional factors undermine plaintiff's claim.  First, he had already drafted his letter of resignation prior to the meeting, casting serious doubt on whether Collier's statements induced him to resign.  Second, the reasonableness of plaintiff's reliance is undermined by the fact that he was an experienced supervisor, yet claims to have relied on the continuation of the overnight shift in perpetuity, regardless of any changes in personnel, management, or operational needs.  Finally, plaintiff has not shown that he suffered any pecuniary loss as a result of Collier's representations.  Collier would have rehired him if he had rescinded his resignation.  Second Declaration of Barry Collier at ¶ 4.[3]  Moreover, plaintiff was an at-will employee who could have been discharged at any time.

In sum, plaintiff has failed to show the existence of any genuine issue of material fact regarding his negligent misrepresentation claim.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN

---

[3] The Court denies plaintiff's request to strike paragraph 4 of Collier's second declaration.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 13

PART America West's motion for summary judgment (Dkt. #28). Plaintiff Holland's claim for negligent misrepresentation is dismissed. Plaintiff Desira's separate wage claim is dismissed.

DATED this 31st day of January, 2006.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 14